JOSEPH T. SELLA ET AL. *v*. IRVING H. MARDER.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued February 6—decided April 3, 1945.

*Jay E. Rubinow,* with whom, on the brief, was *Jacob Schwolsky,* for the appellants (plaintiffs).

*Joseph A. Hoffenberg,* for the appellee (defendant).

DICKENSON, J. The plaintiffs are members of an unincorporated painters' union. The defendant, a painting contractor, entered into a written contract with the union to employ its members under specified conditions and requirements as to wages. The plain-

tiffs later were hired by the defendant at a price agreed upon by them individually with the defendant and performed work for and were paid the agreed wages by him. They later brought this action, claiming that the wages they were paid were less than those required by the contract between the union and the defendant, and demanded the difference as third party beneficiaries of that contract. They further claimed that the contract they made with the defendant was unlawful and in violation of § 1321e of the Cumulative Supplement, 1939, being in the nature of a refund to the defendant which the statute prohibited. The defendant claimed that the plaintiffs were paid in accordance with the terms of his contract with the union, and were, in any event, estopped from repudiating their individual agreement as to wages, and that there was no violation of § 1321e. The trial court rendered judgment for the defendant and the plaintiffs appealed, assigning error in the finding and the conclusions thereon.

The essential facts are as follows: In July, 1940, the defendant made a written contract with the union to engage such of its members as he might require. The contract contained provisions for payment of a minimum wage of $1.12½ per hour for an eight-hour day; that work done outside of the regular time should be paid for at one and one-half times the rate of regular time; that regular time should consist of forty hours a week divided into five work days of eight hours each from Monday to Friday inclusive; that work done outside regular time was not permitted except when unavoidable and then only with the consent of the union; that regular working hours should consist of eight hours a day, from 8 a.m. to 12 noon and from 12:30 p.m. to 4:30 p.m.; and that if the defendant made payments of wages below the scale it

was a violation of the contract subjecting him to suit by the union for the difference and damages. The contract was made with knowledge of by-laws of the union which contained the following provisions: "Sec. 32. All overtime shall be charged as time and one half, also emergency work that must be done on Sundays or Legal Holidays. . . . Sec. 33. Work which must be done in . . . insurance . . . offices . . . which cannot be done during the regular working days or hours shall be deemed emergency work, which may be done . . . provided permission is . . . granted by the Union. . . ." No claim is made that these by-laws did not form a part of the contract between the defendant and the union.

In January, 1941, having previously notified the union business agent that he would need men, the defendant hired three of the plaintiffs and, in February, a fourth, to work as painters in the Aetna Life Insurance Company building, the work to be done after closing hours of the company. On January 20, 1941, the defendant appeared before the union and asked permission to employ its members for night work at the rate of seven hours' work for eight hours' pay, stating that the Aetna Company would not pay painters more than $1.28½ an hour plus a contractor's profit of 10 per cent. The union, after a meeting with representatives of the Aetna Company in which it attempted to obtain an agreement to pay its members time and one-half for such work, voted that the defendant "live up to our By-laws and agreement as to wages to be paid for night work at the Aetna Insurance job." The defendant was notified by the business agent on the day following that he might engage the painters, but must pay them time and one-half and live up to the by-laws of the union and the contract. The defendant paid the painters $1.28½ an hour during

the entire time covered by this action in accordance with cards signed by them reading as follows: "February 3, 1941. I hereby agree to work for H. I. Marder at the rate of $1.28½ an hour said work to be done nights at the Aetna Life Insurance Company." When asked to sign the cards the plaintiffs were told that they were for the defendant's protection so that no claim could be made against him, and if they did not sign them he would be unable to do the work for the Aetna Company.

In September, 1941, the defendant entered into a new contract with the union containing substantially the same provisions as the original one, except that the minimum rate of wages was fixed at $1.25 per hour instead of $1.12½, and the provision that "Work done outside of the regular time or on Holidays shall be paid for one and a half of the rate of regular time" was altered to read "Work done outside of the regular time Monday to Friday Time and One Half. Saturday Nights, Sundays and Holidays Double Time."

There is no claim by the plaintiffs that they worked in excess of eight hours a day or of forty hours a week. Their contention, in substance, is that their work, being night work, was overtime work. They claim that "regular time," which, it is said in article 6 of the original contract, "shall consist of 40 hours per week divided into five work days of eight hours each from Monday to Friday inclusive," is further qualified by rule 4 of the contract, which provides that "Regular working hours shall consist of eight hours a day from 8:00 A.M. to 12:00 P.M. and 12:30 P.M. to 4:30 P.M."; and that work done outside these hours, whether in addition to or in substitution for such hours, is overtime work. The defendant's contention is that "regular time" has no reference to the time of day and that the "regular working hours" provision is

a health rule and has no connection with wage provisions.

In the view we take of the case, the decisive question is what is meant by "regular time" in the contract between the defendant and the union. A reference to the original contract shows that article 4 fixes a minimum wage. Article 6 states that "The regular time shall consist of 40 hours per week divided into five work days of eight hours each from Monday to Friday inclusive. No work shall be done on Saturdays." Article 7 provides that "Work done outside of the regular time or on Holidays shall be paid for one and a half of the rate of regular time. No work shall be done on Labor Day." Article 23 provides that "It is agreed that shall the Employer have paid during the term of this agreement below the scale of wages, it shall be considered a violation of this agreement subject to legal action by the Union for the difference in wages and damages." Article 24 contains health regulations. The final one of these is the provision that "Regular working hours shall consist of eight hours a day from 8:00 A.M. to 12:00 P.M. and 12:30 P.M. to 4:30 P.M." In both union contracts the provision requiring payment at the rate of time and one-half of the rate for "regular time" follows immediately after the provision that "regular time" shall consist of forty hours a week divided into five work days of eight hours each from Monday to Friday inclusive. The provision that payment below the wage scale by the employer shall subject him to suit by the union for the difference in wages and damages follows these provisions and precedes that which relates to "regular working hours." Neither the original nor the revised contract contains any provision that work outside "regular time" as defined in article 6 is to be paid for at the one and one-half rate unless it constitutes more than

"40 hours per week divided into five work days of eight hours each from Monday to Friday inclusive." Article 23, subjecting an employer to liability for underpayment, specifically relates to a violation of the wage scale set up in the earlier provisions and is not a penalty that attaches to article 24, establishing working hours.

The trial court was correct in its conclusion that the wage agreements between the plaintiffs and the defendant were not, so far as the rate of compensation was involved, in violation of the terms of the contract between the defendant and the union. This being determinative of the rights of the parties, we do not discuss the other issues raised.

There is no error.

In this opinion MALTBIE, C. J., BROWN and ELLS, Js., concurred.

JENNINGS, J. (concurring). I concur in the result but prefer to rest the decision on the principle that the plaintiffs cannot sue in derogation of their own contract, voluntarily entered into. *Langmade* v. *Olean Brewing Co.*, 137 App. Div. 355, 121 N. Y. S. 388, 390.